UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

NESTOR J. BELTRAN BARRERA,                                    Petitioner,

v.                                                       Civil Action No. 3:25-cv-541-RGJ

JEFF TINDALL, Jailer, Oldham County
Detention Center; and SAMUEL OLSON, Field
Office Director, Chicago Field Office, Immigration
And Customs Enforcement                                       Respondents.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Nestor J. Beltran Barrera ("Barrera") Writ of Habeas Corpus. [DE 1]. The Court ordered a Show Cause Hearing. [DE 4]. At the parties' request, the Court remanded the hearing and adopted the parties briefing schedule. [DE 12]. Respondents responded on September 10, 2025. [DE 10]. Petitioner replied on September 15, 2025. [DE 11]. Therefore, this matter is ripe for adjudication. For the reasons below, the Court will **GRANT** Barrera's Petition for a Writ of Habeas Corpus.

### I.   Background

Petitioner Barrera was born in, and is a citizen of, Mexico. [DE 1 at 1]. He has been present in the United States for over 20 years and is married with three U.S. citizen children. [*Id.*]. He has lived in Addison, Illinois, for the last 10 years, and provides the primary source of financial support for his family. [*Id.*]. Barrera was initially detained on June 24, 2025, at Clay County Jail in Indiana on a civil Warrant for Arrest of Alien issued by the Department of Homeland Security ("DHS") after immigration agents encountered Barrera in his hometown of Addison. [*Id.* at 2]. DHS officers encountered Barrera while they were looking for someone else. [*Id.*]. The arrest warrant stated that

he was being detained pursuant to 8 U.S.C. § 1226[1] ("Section 1226"). [*Id.* at 5]. On August 6, 2025, an Immigration Judge held a custody and bond hearing, as permitted under Section 1226. [*Id.* at 6]. At that hearing, for the first time since the arrest, Immigration and Customs Enforcement ("ICE") argued that Barrera was being held pursuant to 8 U.S.C. § 1225 ("Section 1225"), *not* Section 1226 as stated in the arrest warrant. [*Id.*]. ICE contends that based on new interim guidance from DHS, issued July 8, 2025, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission," only those noncitizens who have already been *admitted* into the United States are eligible to be released during removal proceedings and *all other* noncitizens are subject to mandatory detention, under Section 1225, not Section 1226. [*Id.*]. This is a reversal of ICE's longstanding policy. [*Id.*]. However, at the custody and bond hearing, the Immigration Judge determined that Barrera was being held under Section 1226, not Section 1225, and was therefore eligible for bond. [*Id.*]. The Immigration Judge found Barrera eligible for release and set bond in the amount of $6,000. [*Id.*].

ICE then filed a Notice of ICE Intent to Appeal Custody Redetermination and invoked an automatic stay pursuant 8 C.F.R. § 1003.19(i)(2). [*Id.* at 7]. On August 15, 2025, ICE filed a formal Notice of Appeal and confirmed they were appealing based upon their statutory interpretation of 8 U.S.C. § 1225. Barrera's family has continually attempted to post bond, yet ICE has refused based upon their appeal and automatic stay. [*Id.*].

Barrera now seeks a Petition for Writ of Habeas Corpus against Jeff Tindall, the Oldham County Jailer; and Samuel Olson, the Field Officer Director for U.S. Immigration and Customs Enforcement.

---

[1] Although the Court recognizes this Section is derived from the Immigration and Nationality Act ("INA") § 236, the Court will use U.S.C. citations throughout for uniformity and asks the Parties to do the same.

## II.   Discussion

Barrera contends that he is being wrongfully detained in violation of the Due Process Clause of the Fifth Amendment of the United States Constitution, the Immigration and Nationality Act, and that the applicable regulation is an Ultra Vires regulation. [DE 1 at 25-28]. He therefore contends that he is eligible for Habeas relief pursuant to 28 U.S.C. § 2241.

### A.   Relevant Immigration Framework

The two primary statutes at issue here are 8 U.S.C. § 1225 and 8 U.S.C. § 1226. Both statutes generally govern detention of noncitizens pending removal proceedings. Section 1225 focuses on mandatory detention provisions, while Section 1226 focuses on discretionary detentions.

#### i.   8 U.S.C. § 1225

Section 1225 applies to "applies to 'applicants for admission,' who are, as relevant here, noncitizens 'present in the United States who [have] not been admitted.'" *Gomes v. Hyde*, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025) (quoting 8 U.S.C. § 1225(a)(1)). Under this Section, all applicants must be inspected by an immigration officer. 8 U.S.C. § 1225(a)(3). Under subsection (b), certain applicants for admission may be subject to removal proceedings. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108-09 (2020). Because Section 1225 is mandatory, a "noncitizen detained under Section 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit.'" *Gomes*, 2025 WL 1869299, at *1 (emphasis added). However, Section 1225(b) only "authorizes the Government to detain certain aliens *seeking admission* into the country." 8 U.S.C. § 1225(b). (emphasis added).

#### ii.   8 U.S.C. § 1226

Section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)

(emphasis added). Section 1226(a) creates a discretionary framework for noncitizens arrested and detained based upon "a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). The Attorney General "may continue to detain the arrested alien," "may release the alien" on bond of at least $1,500 or "may release the alien" on parole. *Id.* The arresting immigration officer makes an initial custody determination. 8 C.F.R. §§ 1236.1(c)(8), (d)(1). However, noncitizens can appeal that determination in a bond hearing before an Immigration Judge. *Id.*

Recently, Congress amended 8 U.S.C. § 1226. While Section 1226(a) is a discretionary framework, Congress added two new *mandatory* detentions to Section 1226 codified in Section 1226(c) through the Laken Riley Act. Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025). Added as a two-step process, the Attorney General *must* detain a noncitizen if (1) they are inadmissible because they are in the United States without being admitted or paroled, obtained documents or admission through misrepresentation or fraud, or lacks valid documentation and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." U.S.C. §§ 1226(c)(1)(E)(i)-(ii).

"Summarizing the relevant distinctions. . . noncitizens detained under Section 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under Section 1226(a) are entitled to a bond hearing before an [immigration judge] at any time before entry of a final removal order." *Rodriguez v. Bostock*, 779 F. Supp.3d 1239, 1247 (W.D. Wash. 2025). In other words, Section 1225(b) "supplement[s] § 1226's detention scheme." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

### B. Whether Section 1225 or Section 1226 Applies

The United States contends that Barrera is properly detained under Section 1225 because Barrera is "seeking admission" into the United States, [DE 10 at 85] even though Barrera has been in the United States for the last twenty years [DE 1 at 1]. The United States contends, "the term 'seeking admission' in § 1225(b)(2)(A) does not refer to a noncitizen attempting to physically access the United States; it instead refers to a noncitizen seeking a lawful means of entering the United States (e.g. receiving a visa)." [DE 10 at 85]. Therefore, "§ 1225(b)(2)(A) requires an immigration officer to detain any noncitizen 'present' in the United States who has not been lawfully admitted or paroled and who seeks a lawful means of entry." [*Id.*]. The United States purports to cite to one case to demonstrate this interpretation. However, in *Florida v. United States*, 660 F. Supp.3d 1239 (N.D. Fla. 2023), the case centered around noncitizens who were apprehended at the Southwest border. *Not* noncitizens who are present without admission and already residing in the United States such as Barrera. Outside of *Florida v. United States*, the United States does not cite any trial or appellate court to support their interpretation, nor has the Court found any.

Petitioner contends that "Respondent twists the meaning of words beyond recognition" in their interpretation of Section 1225 and that they present a "truly tortured reading" of related case law. [DE 11 at 100.] Therefore, Petitioner contends, "Respondent[s] arrested and detained Petitioner pursuant to 8 U.S.C. section 1226." [*Id.*].

When interpreting statutes, "the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022). To do this, the Court must also look at the text "when placed in context." *Id.* And additionally, "[i]t is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void,

5

or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walke*, 533 U.S. 167, 174).

The text of Section 1225 reads as, an "applicant for admission" is "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "Admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). Section 1226 more broadly states that a noncitizen can be detained on "a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). The question before the Court is whether "an alien present in the United States who has not been admitted" includes someone like Barrera, who is not presently seeking admission and has been in the United States for the last twenty years without inspection or authorization. In other words, present without admittance. This is still unclear based on the text alone. *See Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *4 (E.D. Mich. Sep. 9, 2025). Therefore, the Court must continue its statutory analysis.

The Court gives each and every word meaning, and this includes the title. A "title is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates v. United States,* 574 U.S. 528, 552 (Alito, J., concurring in judgment). Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The added word of "arriving" indicates that the statute governs "arriving" noncitizens, not those present already. *Pizarro Reyes* 2025 WL 2609425, at *5. This is supported by the text of the statute itself, which is focused on inspections for noncitizens when they arrive via "crewman" or as "stowaways." 8 U.S.C. § 1225(b)(2). This limited, and more specific methods of entry suggest that Section of 1225 is limited to noncitizens arriving at a border or port and are presently "seeking admission" into the United States. *Pizarro Reyes*, 2025 WL 2609425, at *5

(citing to *Dubin v. United States*, 599 U.S. 110, 118 (2023)). This reinforces the interpretation that Section 1225 is much more limited in scope than the United States asserts. *Id.*

In addition to the title, the context of Section 1225 within the statutory scheme also provides guidance. This is because courts are meant to "construe statutes, not isolated provisions." *King v. Burwell*, 576 U.S. 473, 486 (2015). Here, the Supreme Court has explained that Section 1226 is the "default rule" and "applies to aliens already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 288, 301 (2018). Therefore, the inclusion of the "catchall" provision, after a more specific and detailed Section 1225, is "likely no coincidence, but rather a way for Congress to capture noncitizens who fall outside of the specified categories." *Pizarro Reyes*, 2025 WL 2609425, at *5; *see Rodriguez*, 779 F.Supp.3d at 1258.

Also, the Court takes notice of the recent Congressional amendments, the Laken Riley Act, to Section 1226 as described above. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995). The Laken Riley Act added new a new subsection under Section 1226(c) for certain mandated detention, in an otherwise discretionary Section. But as other courts have noted,

> If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless' and this Court, too, 'will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).

*Lopez-Campos v. Raycraft*, 2025 WL 2496379 at *8 (E.D. Mich. Aug. 29, 2025) (quoting *Maldonado v. Olsen*, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025)). If "Congress had intended for Section 1225 to govern all noncitizens present in the country, who had not been admitted, then it would not have recently adopted an amendment to Section 1226 that prescribes a subset of noncitizens be exempt from the discretionary bond framework." *Id.* As a result, the Court declines to adopt the United States' reasoning.

In a further analysis of the text, Respondents "completely ignore," or even read out, the term "seeking" from "seeking admission." *Lopez-Campos*, 2025 WL 2496379, at *6. The term "seeking" "implies action." *Id.* Noncitizens who are present in the country for years, like Barrera who has been here 20 years, are not actively "seeking admission." *Id.* Even if we take the United States' argument as true, it is still misapplied as applied to Barrera. The United States contends that § 1225(b)(2)(A) "refers to a noncitizen seeking a *lawful* means of entering the United States." [DE 10 at 85]. But "there is nothing in the record to suggest that [Barrera] ever attempted to gain lawful entry." *Lopez-Campos*, 2025 WL 2496379, at *6.

If, the record does suggest anything, it suggests that Section 1226 applies, not Section 1225. This is because when the United States issued its arrest warrant for Barrera, the warrant cited to the INA equivalent of Section 1226. [DE 1-2 at 33]. It was not until the bond hearing that Respondents claimed their actual basis for detention was Section 1225. [*Id.*]. The Court will not credit this post-hoc justification in the face of clear evidence that Barrera was detained pursuant Section 1226. *Cf. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22, 24(2020) (stating that, "[t]he basic rule here is clear: [a]n agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations"). In fact, the United States has attempted this procedural tactic in other trial courts, and they have held the same. *Lopez Benitez v. Francis*, 2025 WL 2371588, at *5 (S.D. N.Y. Aug. 13, 2025); *Lopez-Campos*, 2025 WL 2496379, at *8 n.4.

Respondents lastly cite two recent and non-binding, yet persuasive, BIA opinions to demonstrate the validity of their interpretation. First, *Matter of Q.Li*, 29 I & N Dec. 66 (BIA 2025). [DE 9 at 89]. There, a non-citizen was arrested following examination pursuant to Section 1225. *Q. Li*, 29 I &N. Dec. at 66. The BIA denied bond and stated that "[t]he only exception permitting the release of aliens detained under [section 1225(b)] is the parole authority provided." *Id.* at 69.

8

However, Barrera is not subject to parole. Parole is a pseudo-reality that allows the United States uses that allows non-citizens to physically remain in the in-land United States but are "treated" for purposes of the legal process "as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139. (citations omitted). To further distinguish *Q. Li*, there, the noncitizen was arrested within 100 yards of the border. *Q. Li*, 29 I &N. Dec. at 67. That is far different than Barrera, who has lived in the United States for the past twenty years and was arrested in Addison, Illinois.[2]

Second, the United States suggests that *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025), which was issued within the past two weeks, should control. [DE 9 at 90]. There, the BIA stated that it is a "legal conundrum" for an individual to be in the United States, without being admitted, yet still not "seeking admission." *Yajure Hurtado*, 29 I&N Dec. at 221. Therefore, the BIA concludes, the individual must fall within Section 1225 because the individual "provides no legal authority for the proposition that after some undefined period of time residing in the interior of the United States without lawful status, the INA provides that an applicant for admission is no longer 'seeking admission." *Id.* The Court disagrees with the BIA's novel interpretation of Section 1225 for three reasons. First, the Court should not defer to any agency interpretation of law just because of an ambiguous statute. *Loper Bright Enter. v. Raimando*, 603 U.S. 369, 412-413 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted. . . courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."). Second, based upon the statutory context, scheme, and text of Section 1225, the Court finds it difficult to find that an individual is "seeking admission" when that noncitizen never attempted to do so. Third, the BIA held that the Section 1225(b) does not render superfluous the Laken Riley Act. *Yajure Hurtado*, 29 I&N Dec. at 222. But as described above,

---

[2] Upon a search by the Court, the closest border to Addison, Illinois is the Canada Border. This is approximately 300 miles. Google Maps directions from Addison, Illinois to Canada Border Services Agency, Windsor, GOOGLE MAPS, http://maps.google.com (last visited Sep. 17, 2025).

the Court will not find that the Laken Riley Act "pointless," which based upon the Court's interpretation of the Laken Riley Act, it would. *Lopez-Campos*, 2025 WL 2496379 at *8. Therefore, because it is the "responsibility of the court to decide whether the law means what the agency says" the Court disagrees with the holding of *Matter of Yajure* and declines to follow it. *Perez v. Mortgage Bankers Assn.*, 575 U.S. 92, 109, (2015) (Scalia, J., concurring in judgment).

Courts across the country have been faced with similar questions of law and fact presented by the United States. And *every court* who has examined this novel interpretation of Section 1225 by the United States has rejected their theory and adopted Petitioner's. This includes courts within the Sixth Circuit, and across the country. *Pizarro Reyes*, 2025 WL 2609425, at *7-9 (holding that the text, legislative history and agency guidance support the argument that Section 1226, not Section 1225 applies); *Lopez-Campos*, 2025 WL 2496379 ("the Court finds that Lopez-Campos is not subject to the provisions of Section 1225(b)(2)(A). Rather, he clearly falls under the provision of Section 1226(a), and is subject to the discretionary bond determination outline therein."); *Rodriguez*, 779 F. Supp.3d at 1261 ("[Petitioner] has shown that the text of Section 1226, canons of interpretation, legislative history, and longstanding agency practice indicate that he is governed under Section 1226(a)'s "default" rule for discretionary detention."); *Rosado v. Figueroa*, 2025 WL 2337099, at *8 (D. Ariz. Aug. 11, 2025) ("Adoption of Respondents' position would render significant portions of 8 U.S.C. § 1226 meaningless."); *Kostak v. Trump*, 2025 WL 2472136, at *3 (W.D. La. Aug. 27, 2025). For the reasons above, the Court concurs with district courts across the country.

  **C.**   **Lawfulness of Current Detention**

The Court therefore comes to the same conclusion that the Immigration Judge came to in that Section 1226 applies to Barrera's detention. Nevertheless, Barrera remains in ICE custody pursuant to the automatic stay. 8 C.F.R. § 1003.6. Thus, the Court must determine whether the

continued detention is in violation of his Due Process. The Due Process Clause extends to all persons regardless of status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). This includes non-citizens. *Id.* To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335. In response to the Due Process violation, Respondents assert that because the Petitioner was given notice of the charges, has counsel, and can respond to ICE's appeal, ICE is not in violation of his Fifth Amendment Rights. [DE 10 at 95].

        *i.* Private Interest

It is undisputed Barrera has a significant private interest in not being detained. One of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Courts can also consider the detainee's condition of confinement. *Martinez v. Noem*, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025). This is to determine if the conditions are indistinguishable from criminal incarceration. *Id.* Barrera is being held at Oldham County Detention Center, separated from his wife and three U.S. citizen children. [DE 1 at 1, 7, 23]. His children are "struggling without him" and are "struggling to understand why [their] father is not around." [DE 1 at 7, 23].

Additionally, the automatic stay does not have a foreseeable end date. This is because "[i]f the BIA does not resolve the appeal within the ninety-day period, ICE can seek a discretionary

stay for an additional 30 days." *Sampiao v. Hyde*, 2025 WL 2607924, at *10 (citing 8 C.F.R. § 1003.6(c)(5)). The matter can also be referred to the Attorney General, who can stay the case *indefinitely* pending disposition. 8 C.F.R. § 1003.6(d) (emphasis added). Barrera thus faces the possibility of months possibly years under the automatic stay. *Pizarro Reyes*, 2025 WL 2609425, *3 (stating that bond appeals "typically take six months or more to be resolved at the [Board of Immigration Appeals]"). Therefore, the first *Matthews* factor strongly favors Barrera.

    *ii.*  Risk of Error

  The second factor concerns the risk of the erroneous deprivation of Barrera's liberty interest by virtue of the automatic stay's procedures. This factor also weighs in favor of Barrera. This is because the regulation's procedures *are* likely to erroneously deprive people like Barrera of their liberty because *only* noncitizens who have already demonstrated release from detention are subject to the automatic stay. *Sampiao*, 2025 WL 2607924, at *10; *Garcia Jimenez v. Kramer*, 2025 WL 2374223, at *3 (D. Neb. Aug. 14, 2025).

  At the bond hearing, the Immigration Judge heard testimony, reviewed evidence, and made an independent decision that bond was appropriate for Barrera. 8 C.F.R. § 1003.19(a). Yet the automatic stay allows the United States to "usurp" the role of an immigration judge and make a unilateral decision. *Sampiao*, 2025 WL 2607924, at *10; *Ashley v. Ridge*, 288 F. Supp. 2d 662, 668, 671 (D.N.J. 2003) (holding that the automatic stay regulation creates a "patently unfair situation by 'tak[ing] the stay decision out of the hands of the judges altogether and giv[ing] it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified'" and "renders the Immigration Judge's bail determination an empty gesture"). Notably, the United States does not even contest the findings of the Immigration Judge in their appeal. [DE 1 at 7]. The Rather, the United States' sole reason for their appeal is that the basis of detention is Section 1225, not Section 1226. [*Id.*]. Additionally, there are reasonable

12

alternatives available for the United States to pursue. One option is a discretionary emergency stay from the BIA, which would avoid the usurping nature of the current automatic stay. *See* 8 C.F.R. § 1003.19(i)(1); *Maldonado*, 2025 WL 2374411 (holding that 8 C.F.R. § 1003.19(i)(1) provides a "simple alternative" to safeguard rights). Because of this "simple alternative," the Court finds that the second *Matthews* factor also sides in favor of Barrera.

        *iii.*    United States' Interest

The final *Matthews* factor concerns the Unites States' interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. The Court recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings. *Sampiao*, 2025 WL 2607924, at *12. But there is a fatal flaw with that reasoning. An independent, neutral arbitrator determined that the specific noncitizen at issue in this matter, Barrera, does *not* pose that type of risk. [DE 1-1 at 31]. Therefore, "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydin v. Trump*, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025). Because of that, the Court finds that the third *Matthews* factor also favors Barrera. Therefore, all three *Mathews* weigh in favor of Barrera.

Based upon the language, text, structure, and recent congressional action, it is clear that Section 1226 governs Barrera's detention. The post-hoc addition of Section 1225 is neither applicable, nor correct. Further, the Court finds Barrera's detention pursuant to the automatic stay codified at 8 C.F.R. § 1003.19(i)(2) is in violation of his Due Process rights under *Matthews*. The Court need not reach the merits of Barrera's *Ultra Vires* arguments, as the Respondents violation of the INA and the Due Process Clause are sufficient for his requested relief. *Sampiao*, 2025 WL 2607924, at *12.

As a remedy, courts across the country have ordered the release of individuals stemming from ICE's illegal detention. *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025). The Supreme Court has also recognized that "Habeas has traditionally been a means to secure *release* from unlawful detention." *Thuraissigiam*, 591 U.S. at 107 (2020) (emphasis in original). As Barrera is currently subject to bond, Respondents are ordered to release Barrera immediately upon posting of bond, with no other conditions beyond those imposed by the Immigration Judge. *Sampiao,* 2025 WL 2607924, at *12.

### III.　Conclusion

For the reasons stated above, the Court **GRANTS** Barrera's Petition for Writ of Habeas Corpus [DE 1]. Upon the posting of bond, the United States is directed to release Petitioner Barrera from custody; and further, to certify compliance with the Court's order by a filing on the docket no later than **September 22, 2025.**

Rebecca Grady Jennings, District Judge
United States District Court

September 19, 2025